**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No. 05-cr-00537-REB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

STAN TARAN FORD,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL (SECOND)
– *BRADY* VIOLATION**

---

**Blackburn, J.**

      The matter before me is defendant's **Motion For New Trial (Second)** *Brady*

**Violation** [#173] filed September 27, 2006.[1] The government objects. *See* Response

[#179] filed October 13, 2006. An evidentiary hearing was held on January 30, 2007.  I

deny the motion.

      In fashioning my ruling, I have considered the following: all relevant adjudicative

facts in the file and record of this action as developed *pro tanto*; the pretrial and trial

proceedings conducted in this case; the evidence educed at trial; the evidence educed

during the January 30, 2007, hearing; and all reasons stated, arguments advanced, and

authorities cited by the parties in their papers and during the January 30, 2007, hearing.

      In assessing the credibility of the witnesses who testified during the hearing, I

---

[1] I denied defendant's first **Motion for New Trial** [#161] filed June 16, 2006, via my **Order Denying Defendant's Motion for New Trial** [#164] entered July 13, 2006.

considered all facts and circumstances shown by the evidence that affected the credibility of each witness, including the following factors: each witness' means of knowledge, ability to observe, and strength of memory; the manner in which each witness might be affected by the outcome of the hearing; any relationship each witness has to either side in the case; and the extent to which each witness is either supported or contradicted by other evidence presented during the hearing or previously during the pretrial and trial proceedings.

Accordingly, I enter the following findings of fact, conclusions of law, and orders. My findings of fact are based upon a preponderance of the evidence.

## I. PROCEDURAL BACKGROUND

### A. Pretrial

#### i. The Indictment

By four-count Indictment [#16] filed December 19, 2005, defendant was charged in counts one, two, and three with knowingly possessing and transferring a machine gun in violation of 18 U.S.C. § 922(o), and in count four with knowingly possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).

#### ii. Pretrial Proceedings

Before trial, defendant filed, *inter alia*, a **Motion of Defendant Stan Taran Ford For *Brady* Materials** [#29]. The motion was filed on January 24, 2006, and heard on April 4, 2006. During the hearing defense counsel argued and requested as follows:

> Another item that I think this aspect of our Brady motion places at issue is, we should be entitled to any e-mails that they preserved that were sent by confidential informant No. 2, Mr. Heavilin to Mr. Ford.
> The existing discovery suggests that they did maintain records of the e-mail traffic between the two of them. The forensic evaluation they

did of the computers confiscated from Mr. Ford's home reveals a grand total of about ten e-mails between Mr. Ford and the second confidential informant.

As an offer of proof, we submit that there are many more, and I gather from other things that are in discovery, that they may well have all of those that they didn't have to download from any computers that were confiscated from Mr. Ford's home. They have them separately, by virtue of the account they presumably set up in connection with the undercover work that Mr. Heavilin engaged in.

So our request is for the court to require the government provide us with all such information.

*See* Transcript (Exhibit C) at page 23, line 9 to page 24, line 1. The request was confessed by the government. Therefore, defendant made a specific pretrial request for the e-mail traffic made the focus of his motion for new trial.

## B. Trial

During the nine day jury trial, which began on May 22, 2006, defendant claimed that he had been entrapped concerning the sale of three machine guns to Keith Heavilin, the government's cooperating witness.[2] Defendant claimed that because of his vulnerable psychological and emotional makeup, he was, *inter alia*, particularly susceptible to the entreaties of Heavilin, who defendant saw as a father figure that defendant wanted to please and did not want to disappoint. As to count three, which charged the sale of the third illegal machine gun on November 21, 2005, the government contended that there was no entrapment by Heavilin because the idea and impetus for the third illegal weapon came from defendant. Contrastingly, defendant argued that the interactions and communications, including several e-mails, between Heavilin and himself after the sale of the second machine gun on August 2, 2005, and before the sale of the third weapon on November 21, 2005, established that the it had

---

[2] Obviously, entrapment did not apply to count 4.

been Heavilin who had relentlessly pursued a third machine gun.  On June 6, 2006, the

jury found defendant not guilty on counts one, two, and four, but guilty on count three –

the third machine gun count.[3]

## II. THE MOTION FOR NEW TRIAL

### A. Rule 33

Procedurally, defendant's second motion for new trial is brought under

Fed.R.Crim.P. 33, which provides in relevant part:

> **Rule 33. New Trial**
> **(a) Defendant's Motion**. Upon the defendant's motion, the court may
> vacate any judgment and grant a new trial if the interest of justice so
> requires. If the case was tried without a jury, the court may take additional
> testimony and enter a new judgment.
> **(b) Time to File**.
>          **(1) Newly Discovered Evidence**. Any motion for a new trial
> grounded on newly discovered evidence must be filed within 3 years after
> the verdict or finding of guilty. If an appeal is pending, the court may not
> grant a motion for a new trial until the appellate court remands the case.
>          **(2) Other Grounds**. Any motion for a new trial grounded on any
> reason other than newly discovered evidence must be filed within 7 days
> after the verdict or finding of guilty.[4]

### B. Defendant's Claimed *Brady* Violations

### i. The Claims Raised By Motion

In his second motion for new trial, defendant seeks a new trial under

---

[3] In large part defendant's second motion for new trial relies on the inscrutable assumption that the jury concluded that defendant had been entrapped with respect to the first two machine gun sales to Heavilin (counts one and two), but not with respect to the third sale (count three), which the government claimed was defendant's idea free from any previously entrapping influence exerted by Heavilin – a theory that defendant resisted survigrously at trial. Of course, other equally plausible hypotheses exist.

[4] Although defendant does not rely expressly on the grounds of newly discovered evidence under Fed.R.Crim.P. 33 (b)(1), *per force* he must for his motion to be timely filed. *See* Fed.R.Crim.P. 33(b)(2), which requires that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty." Here, the jury returned a verdict of guilty on Count 3 on June 6, 2006, *see* **Verdict Form – Count 3** [#160] at 5-6, and defendant filed this motion for new trial on September 27, 2006.

Fed.R.Crim.P. 33(a) and (b)(2) on Count 3 of the Indictment, contending generally  ". . . that exculpatory evidence was withheld from the Defendant and, as a result, Defendant was denied a fair trial consistent with the Fifth Amendment and the Sixth Amendment to the Constitution of the United States."[5] *See* Motion at 1.  Specifically, "Mr. Ford asserts that between the sale of the second weapon (on August 2, 2005) and October 5, 2005, the date of the email message referenced in Exhibit A (to defendant's second motion for new trial), Mr. Heavilin sent at least two email communications, and Mr. Ford responded to at least one of them. After October 5, 2005, Mr. Ford asserts that Mr. Heavilin initiated at least two additional emails seeking to convince Mr. Ford to find and locate a third weapon for him. It is this series of emails between the sale of the second weapon (on August 2, 2005) and the sale of the third weapon (on November 21, 2005) that is the exculpatory evidence withheld from the Defendant and, in turn, withheld from the jury." *See* Motion at 4, ¶ 11. Defendant claims that Keith Heavilin, the government's cooperating witness, withheld the emails.[6] *See Id*. at 3, ¶ 8.

### ii. The Claims Made During Hearing

During the January 30, 2007, evidentiary hearing defendant expanded his claim of ***Brady*** violations to include more e-mails between himself and Heavilin than raised in his motion for new trial and to include more telephone communications between himself

---

[5] Other than a summary reference in the first and last paragraphs of his motion, defendant has not developed or circumstantiated factually or legally his assertion that his Sixth Amendment right to effective assistance has been violated.

[6] Although not disputed by the government, it is clear that Heavilin's conduct in acting first as a cooperating source for the joint task force on terrorism during the investigation and then as a cooperating witness for the government during the trial is imputed to the government for ***Brady*** purposes. *See **United States v. LaVallee***, 439 F.3d 670, 698 n 19 (10th Cir. 2006); and ***United States v. Geames***, 427 F.3d 1333, 1337 n 2 (10th Cir. 2005).

and Heavilin than disclosed by the government in discovery.[7]

## III. THE STANDARD OF REVIEW

When the government withholds or suppresses evidence demanded[8] by a

defendant, which, if made available, would tend to exculpate him, it violates the due

process rights of that defendant. ***Brady v. Maryland***, 373 U.S. 83, 87, 83 S.Ct. 1194,

10 L.Ed.2d 215 (1963). To establish a ***Brady*** violation, "'a defendant must demonstrate[9]

(1) the prosecution suppressed evidence,[10] (2) the evidence was favorable to

defendant, and (3) the evidence was material.' *United States v. Quintanilla*, 193 F.3d

1139, 1149 (10th Cir.1999)."[11]  ***United States v. LaVallee***,  439 F.3d 670, 698 (10 th

---

[7] However, I confined my analysis to the alleged missing e-mails between Heavilin and defendant because 1) defendant did not raise or discuss the issue of other unreported and undisclosed telephonic communications in his motion for new trial, the **Affidavit of Stan Taran Ford** (Exhibit C to his motion), his reply, or his closing argument; and 2) the credible evidence educed at hearing established that there were no missing records of telephonic communications.

[8] In fact, the government has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request. ***Scott v. Mullin***, 303 F.3d 1222, 1228 n. 2 (10th Cir.2002) (citing ***United States v. Agurs***, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

[9] *See,* e.g., **United States v. Bonnett**, 877 F.2d 1450, 1460 (10th Cir.1989) (defendant has the burden of proving a Brady violation). The tenor of defendant's reply suggests that defendant misapprehended  the allocation of the burden of persuasion. *See* Reply [#184] filed November 6, 2006. I disabused defense counsel of any such misunderstanding at the outset of the evidentiary hearing on January 30, 2007, when I required the defendant to present his evidence first.

[10] Neither scienter nor *mens rea* is relevant or required. *See* **United States v. Hernandez-Muniz**, 170 F.3d 1007, 1010 -1011 (10th Cir. 1999) ("The Supreme Court in Brady held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' 373 U.S. at 87, 83 S.Ct. 1194.") For a more eloquent statement of the same principle, *see also* ***United States v. Agurs***, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ("Constitutional error arises from 'the character of the evidence, not character of the prosecutor.'").

[11] Contrastingly, to procure a new trial based on newly discovered evidence not involving a *Brady* violation, the defendant must show: (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal. ***United States v. Gwathney***,  465 F.3d 1133, 1144 (10th Cir. 2006) (quotation omitted).

Cir. 2006).

Evidence is favorable to the defendant if it constitutes either exculpatory or impeachment evidence. ***Smith v. Sec'y of N.M. Dept. of Corrs.***, 50 F.3d 801, 825 (10th Cir.1995). The Supreme Court has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment····" ***Brady***, 373 U.S. at 87, 83 S.Ct. 1194. With the holding of ***Giglio v. United States***, the Supreme Court further delineated the disclosure requirements explaining that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (quoting ***Napue v. Illinois***, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)). Thus, evidence is favorable to defendant if it is favorably relevant to guilt, credibility, or punishment.

"[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***United States v. Bagley***, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). In turn, a "reasonable probability" is a " 'probability sufficient to undermine confidence in the outcome.' " ***Bagley***, 473 U.S. at 682, 105 S.Ct. at 3383 (quoting ***Strickland v. Washington***, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). "Brady is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." ***United States v. Beasley***, 576 F.2d 626, 630 (5th Cir. 1978), cert. denied, 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). Implicit in this requirement is a concern that the suppressed evidence could have affected the jury's determination of

guilt. ***United States v. Agurs***, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

In ***Agurs***, *supra*., the Supreme Court homologated a sliding scale analysis for

determining the level of materiality necessary to establish a ***Brady*** violation. This sliding

scale analysis has been employed in the Tenth Circuit:

> Due to the large array of evidence which can be considered favorable to
> the defense, courts have employed a sliding scale analysis in determining
> what level of materiality must be proven in order to establish a *Brady* viola-
> tion. See: *United States v. Agurs*, *supra*; *United States v. Jackson*, 579 F.2d
> 553 (10th Cir. 1978), cert. denied sub nom., *Allen v. United States*, 439 U.S.
> 981, 99 S.Ct. 569, 58 L.Ed.2d 652 (1978). In *Agurs*, the Court announced
> three levels of materiality: first, in those cases in which the prosecution
> has knowingly used perjured testimony, the conviction must be set
> aside if there exists a reasonable likelihood that the false testimony could
> have affected the jury's verdict; *second*, **where a pretrial request has been
> made for specific evidence, the judgment must be vacated where the
> suppressed evidence might have affected the outcome of the trial**; and
> third, where there has been a general request for *Brady* material or no
> request at all, the test of materiality is whether "the omitted evidence cre-
> ates a reasonable doubt (as to the defendant's guilt) that did not otherwise
> exist." *Id.*, 427 U.S. at p. 112, 96 S.Ct. at p. 2402.

***Talamante v. Romero***,  620 F.2d 784, 787 -788 (10th Cir.1980). (Emphasis supplied).

Here, the second level of materiality – that the suppressed evidence might have

affected the outcome of the trial – is apposite because defendant made a specific

pretrial request for the email evidence now at issue.[12]

Finally, materiality is determined by considering the importance of the evidence

that was suppressed in the context of and in relation to all of the evidence educed at

trial:

> In evaluating the materiality of withheld evidence, we do not consider each

---

[12] Thus, it may be more apt to say that"[t]he successful establishment of a *Brady* violation requires proof of: "(a) suppression by the prosecution *after a request by the defense*, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." ***Moore v. Illinois***, 408 U.S. 786, 794-795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972). (Emphasis supplied).

piece of withheld evidence in isolation. Rather, we review the cumulative impact of the withheld evidence; its utility to the defense as well as its potentially damaging impact on the prosecution's case. *Kyles*, 514 U.S. at ----, 115 S.Ct. at 1566-69. Furthermore, recognizing that, in the usual case, not "every item of the State's case" will be undercut if the Brady material is disclosed, id. at ----, 115 S.Ct. at 1574, we evaluate the materiality of withheld evidence in light of the entire record in order to determine if "the omitted evidence creates a reasonable doubt that did not otherwise exist." *Agurs*, 427 U.S. at 112, 96 S.Ct. at 2402; Hughes, 33 F.3d at 1252; cf. *United States v. Buchanan*, 891 F.2d 1436, 1441 (10th Cir.1989), cert. denied, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). "What might be considered insignificant evidence in a strong case might suffice to disturb an already questionable verdict." Robinson, 39 F.3d at 1119 (citing *Agurs*, 427 U.S. at 113, 96 S.Ct. at 2402).

**Banks v. Reynolds** , 54 F.3d 1508, 1519 (10th Cir. 1995). It is with these principles in mind that I analyze the record.

## IV. ANALYSIS

### A. Whether Evidence Suppressed By The Government

Concerning the first **Brady** requirement – that the defendant prove that the government suppressed or withheld evidence – I find and conclude that there were three – but only three – e-mails suppressed by the government. One such e-mail is Heavilin's pre-October 5, 2005, e-mail to defendant. There is no written record of this e-mail. However, its existence and substance are suggested by defendant's reply e-mail of October 5, 2005, *see* Exhibit A*,* and by Heavilin's reference to such an e-mail in the transcript of his face to face meeting with defendant on October 18, 2005, *see* Exhibit D at 004, where Heavilin is heard to say to defendant, ". . . And, that's kind of why I e-mailed and said give me a clue."

The second such e-mail is defendant's October 28, 2005, e-mail reply to a preceding Heavilin e-mail. *See* Exhibit E at "Page 1." This e-mail was produced to

defendant after the trial in response to a subpoena duces tecum, which defendant caused to be served on Yahoo, Inc., focusing on Heavilin's e-mail account. The existence of this e-mail was discovered independently by the government after the trial by Heavilin during a search of his computer at the request of the FBI in preparation for the hearing on defendant's motion for new trial. Although stored on Heavilin's computer in a "hold" file, it was inadvertently forgotten by Heavilin and never produced by the government.

The third and final such e-mail is the Heavilin e-mail, which precipitated defendant's e-mail reply of October 28, 2005.[13] There is no written record of the substantive contents of this e-mail. However, the fact of its existence appears from the information on Exhibit E at "Page 1," which shows clearly that defendant's October 28, 2005, e-mail was a reply sent to Heavilin's e-mail address.  In all probability this e-mail was sent by Heavilin to defendant between October 18, 2005 – the date of their face to face meeting at the Rocky Flats Lounge – and before noon on October 28, 2005 – the date and time of defendant's reply.

In summary, the credible and cogent evidence indicates the existence of three e-mails that were not directly disclosed or produced by the government to defendant. There was a pre-October 5, 2005, e-mail from Heavilin to defendant to which defendant replied by e-mail on October 5, 2005. *See* Exhibit A.  There was an e-mail sent by Heavilin to defendant some time between October 18, 2005, and October 28, 2005, to

---

[13] It is immaterial whether defendant's reply e-mail of October 28, 2005, was in reply to a preceding e-mail sent by Heavilin to defendant or whether defendant's e-mail was in response to some other form of communication, such as an earlier telephone call made by Heavilin to defendant. What matters is that defendant is replying, not initiating, and that Heavilin's preceding communication – regardless of its form – was intended to reiterate and asseverate Heavilin's persistent, personal entreaties that defendant press on to find Heavilin a third machine gun.

which defendant replied on October 28, 2005. Finally, there was defendant's October 28, 2005, e-mail reply to Heavilin's post-October 18, 2005, e-mail. *See* Exhibit E at "Page 1."

## B. Whether The Evidence Was Favorable To Defendant

Concerning the second ***Brady*** requirement – that the evidence suppressed by the government be favorable to defendant – I find and conclude that all three e-mails, which I found were suppressed by the government, were arguably favorable to defendant. Again, evidence is favorable to defendant if it is favorably relevant to guilt, credibility, or punishment.  Here, I find that the three e-mails were favorable to defendant in the sense that they went to exculpation because to some extent they corroborated defendant's claim that the idea and impetus for the third illegal machine gun was broached and pursued by Heavilin, not the defendant, and in the sense that the e-mails went to credibility because to some extent they contradicted Heavilin's and Agent Schmitt's testimony that the idea and opportunity for the third machine gun came from defendant "out of the blue." [14]

After analyzing defendant's replies to the two e-mails (which replies I do have), I may infer that in those two e-mails Heavilin was exhorting defendant to locate and sell the third illegal machine gun.[15] This inference is readily available because in both of

---

[14] However, in reaching this finding and conclusion, I concede that I have indulged in a modicum of inferential munificence. A puissant argument can be made that the admission in evidence at trial of defendant's October 28, 2005, e-mail and Heavilin's preceding e-mail makes defendant's November 19, 2005, change of mind appear truly "out of the blue" as the government argued at trial.

[15] Admittedly, I am speculating to an extent about the content of the two, Heavilin e-mails, which I found were withheld by the government, because there is no direct evidence about the contents of those two e-mails. I know that a ***Brady*** violation analysis does not include speculation. "The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." ***United States v. Fleming***, 19 F.3d 1325, 1331 (10th Cir.), cert. denied 513 U.S. 826, 115 S.Ct. 93, 130 L.Ed.2d 44 (1994);

defendant's replies – the first on October 5, 2005, and the second on October 28, 2005 – defendant reiterates in the code used by the parties his unwillingness and inability to locate and sell a third machine gun.  Thus, as a matter of logic, the replies imply the existence of antecedent e-mails that exhorted defendant to continue to seek out a third gun.

## B. Whether The Evidence Was Material

Finally, concerning the third *Brady* requirement – that the evidence be material – I find and conclude that none of the three e-mails was material in the constitutional sense.  I can not say that the suppressed evidence might have affected the outcome of the trial.  *See Talamante v. Romero*,  620 F.2d 784, 788 (10th Cir.1980).

Defendant's argument that these e-mails were material is perhaps best presented by defendant in his affidavit, which was attached to his second motion for new trial:

> Stan Taran Ford, being of lawful age and upon his oath, deposes and states as follows:
>
> 1.  I am the Defendant in the above-captioned case.  I make this Affidavit based on my own personal knowledge.
>
> 2.  During my trial, I exercised my right to testify.  As part of my testimony, I asserted that there were numerous email communications between Mr. Heavilin, the government undercover agent, and myself. I was unable to produce copies of many of these email communications because the government seized my computers, and because I could not obtain duplicate copies from my "hotmail" account.
>
> 3.  Through my attorney, Mr. Hood, I requested that the government turn over all of Mr. Heavilin's emails to me.  However, we received only selected recapitulations on FBI-302 Forms and some circulars that

---

see also *Agurs*, 427 U.S. at 109-10, 96 S.Ct. at 2400-01. However, my ratiocination is based on logical probability, not mere possibility.

were introduced as evidence in that trial.

4.  Critical email communications demonstrating the pressure put upon me by Mr. Heavilin to sell him an automatic weapon were not produced. In particular, the emails sent to me by Mr. Heavilin after the sale of the second weapon and before the sale of the third weapon were not turned over by the prosecution.

5.  Had the prosecution turned over these emails to the defense, I would have been able to demonstrate with documentary evidence that it was Mr. Heavilin who insisted that he was "desperate" for such a third weapon.

6.  Furthermore, the missing emails would have refused the testimony by Mr. Heavilin, both in the prosecution case in chief and on rebuttal, as well as the testimony of FBI agent Schmitt, that the need to sell the third weapon did not come from me and did not come "out of the blue" as they testified.

*See* Exhibit C to Motion [#173].[16]

### i. Heavilin's Pre-October 5, 2005, E-mail To Defendant

I have found already that the government suppressed Heavilin's pre-October 5, 2005, e-mail that precipitated defendant's e-mail reply of October 5, 2005 (Exhibit A). Also, I have found that Heavilin's e-mail constituted evidence that was arguably favorable to defendant.

Defendant's reply of October 5, 2005, stated as follows:

Just returned from out of town. Socially sounds good. I'll call you and set something up over next couple of days. Not any good computer deals out there right now. I think rising costs are to blame. Just keep watching the big store ad's [*sic*] for a sale. Should be able to call in the next couple of days.

*See* Exhibit A.

Heavilin's pre-October 5, 2005, email to which defendant replied by e-mail on

---

[16] Although defendant contends that the government recalled Heavilin as a rebuttal witness to rebut defendant's claim that Heavilin, not defendant, was the moving force for a third machine gun, his contention is belied by the trial record; Heavilin was not recalled for that purpose.

October 5, 2005, is not material, but instead, is largely cumulative. Although Heavilin's e-mail has never been produced, its existence and substance are fairly implied by the existence and substance of defendant's October 5, 2005, e-mail in reply.

Although I do not have Heavilin's e-mail, I can infer, as could the jury, that in this e-mail, Heavilin raised and discussed the subject of a third machine gun; thus, positioning defendant to argue as he did at trial that the idea and impetus for a third machine gun was Heavilin's.  Given the nature and tenor of defendant's reply, having Heavilin's preceding e-mail is unnecessary. Thus, I can not say that admission of Heavilin's missing e-mail might have affected the outcome of the trial.

### ii. Defendant's October 28, 2005, E-mail Reply

I have found already that the government suppressed defendant's October 28, 2005, e-mail that replied to an e-mail sent by Heavilin to defendant between October 18, 2005, and October 28, 2005. (Exhibit E, "Page 1"). Also, I have found that defendant's e-mail constituted evidence that was arguably favorable to defendant.

Defendant's reply of October 28, 2005, to Heavilin's earlier e-mail stated as follows:

> nothing at this time. I don't expect to find a special on a computer this close to christmas [*sic*]. Too much demand for a good sale. Just keep watching the newspaper ad's [*sic*]. I am still watching.

*See* Exhibit E, "Page 1."

Like defendant's October 5, 2005, e-mail, his October 28, 2005, e-mail is not material, but instead, is largely cumulative. Unlike defendant's October 5, 2005, e-mail, the jury did not have the benefit of defendant's October 28, 2005, e-mail. However, this e-mail comes only ten days after Heavilin's and defendant's face to face meeting at the

Rocky Flats Lounge on October 18, 2005, when defendant reiterated, as he had as recently as October 5, 2005, that he continued to be unwilling and unable to locate and deliver the third machine gun that Heavilin requested. Furthermore, this e-mail comes only three weeks before the November 17, 2005, telephone call from Heavilin to defendant during which phone call Heavilin arguably is heard to reiterate his exhortation that defendant continue efforts to procure a third machine gun, and defendant arguably is heard to reiterate his position that he is unwilling and unable to do so.  Thus, I can not say that admission of this e-mail in addition to the evidence of the events of October 5 and 18, 2005, and November 17, 2005, might have affected the jury's verdict on count three.

### iii. Heavilin's Pre-October 28, 2005, E-mail

I have already found that the government suppressed an e-mail sent by Heavilin to defendant sometime between October 18, 2005, and October 28, 2005, to which defendant replied by e-mail before noon on October 28, 2005.  Also, I have found that Heavilin's e-mail constituted evidence that was arguably favorable to defendant. Although Heavilin's e-mail has never been produced, its existence and substance are fairly implied by the existence and substance of defendant's October 28, 2005, e-mail in reply. Although I do not have Heavilin's e-mail, I can infer that in this  e-mail, Heavilin again raised and discussed the subject of a third machine gun.

However, I can not say that one more e-mail exchange initiated by Heavilin between October 18, 2005, and October 28, 2005, which e-mail exchange might have been offered by defendant to prove that from the time of the sale of the second illegal machine gun on August 2, 2005, until after November 17, 2005, defendant

pertinaciously resisted Heavilin's renitent, personal entreaties to find a third illegal

machine gun, might have affected the outcome of the trial as to the third sale on

November 21, 2005. Stated differently, there is no cogent evidence that between

October 18, 2005, which is the date Heavilin and defendant met face to face at the

Rocky Flats Lounge, when defendant arguably told Heavilin yet again that he

(defendant) was unwilling and unable to procure a third illegal machine gun, and

November 17, 2005, when Heavilin called defendant, who again arguably asseverated

to Heavilin that he (defendant) was still unwilling and unable to procure a third illegal

machine gun, that defendant indicated his willingness or ability to procure the third

machine gun that Heavilin continued to request. Furthermore, the e-mail exchange

between October 18, 2005, and October 28, 2005, is not necessary to rebut any

competing or contradictory evidence presented by the government at trial concerning

that period of time.  Thus, additional evidence that between October 18, 2005, and

November, 17, 2005, there arguably was one more attempt by Heavilin, which attempt

arguably was rebuffed again by defendant as it was on October 5, October 18, and

November 17, 2005, is only cumulative and not material in the constitutional sense. [17]

### V. CONCLUSION

Three e-mails arguably favorable to defendant were withheld from the defendant

by the government. However, whether considered individually or collectively in the

context of defendant's theory of defense and the evidence educed at trial, none of

---

[17] Truly material would have been evidence of governmental activity or communication occurring after the November 17, 2005, phone call from Heavilin to defendant, providing an exculpatory explanation of defendant's unforseen and unanticipated change of position that lead to defendant's unexpected November 19, 2005, call to Heavilin when defendant informed Heavilin that he (defendant) had the machine gun that Heavilin wanted and that he (defendant) wanted to consummate its sale and  transfer to Heavilin as soon as possible.

these e-mails was material in a constitutional sense. The evidence that was available to

defendant permitted him to advocate survigrously his position that as to the sale of the

third machine gun on November 21, 2005, he pertinaciously communicated his

unwillingness and inability to satisfy Heavilin's tendentious efforts to procure a third gun.

Therefore, No **Brady** violation occurred. Accordingly, defendant's Fifth Amendment

right to due process was not infringed. Thus, defendant's motion for new trial should be

denied.

## VI. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That  defendant's **Motion For New Trial (Second)** *Brady* **Violation** [#173]

filed September 27, 2006, **IS DENIED**; and

2. That counsel shall contact the court's administrative assistant at 303-335-

2350 on March 5, 2007, at 10:00 a.m., to set this matter for sentencing.

Dated February 26, 2007, at Denver, Colorado.


**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**